(75 South. 638)

LOUISVILLE & N. R. CO. v. PARISH.
(3 Div. 258.)

(Court of Appeals of Alabama. May 29, 1917.)

1. DETINUE ⬤5—PROPERTY IN PLAINTIFF—RIGHT TO POSSESSION.

In an action of detinue, plaintiff must show that he has property, general or special, in the chattels sought to be recovered, and must be entitled to their immediate possession.

[Ed. Note.—For other cases, see Detinue, Cent. Dig. §§ 5–9.]

2. INTOXICATING LIQUORS ⬤328—ALCOHOL—STATUTES.

Where plaintiff, by an action of detinue, sought to obtain from a railroad possession of a shipment of alcohol to carry it to his place of business, where he was engaged in the sale of beverages, to keep and use it there in the manufacture of extracts, in violation of Acts 1915,

p. 13, § 16, he was not within the protection of Acts 1915, p. 5, § 10, nor Acts 1915, p. 556, § 9, and the railroad could not deliver to plaintiff without violating the criminal law, nor could plaintiff accept delivery without a like result, so that plaintiff, not being entitled to immediate possession, was not entitled to recover in detinue.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 466.]

Appeal from Circuit Court, Lowndes County; A. E. Gamble, Judge.

Action by J. L. Parish against the Louisville & Nashville Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Powell & Hamilton, of Greenville, W. L. Martin, Atty. Gen., and Harwell G. Davis, Asst. Atty. Gen., for appellant. R. L. Goldsmith, of Hayneville, for appellee.

BROWN, P. J. This is an action of detinue by appellee against appellant to recover five gallons of alcohol, which the appellant received as a common carrier at New Orleans, La., billed to the appellee at Ft. Deposit, in this state. When the alcohol arrived at its destination, Ft. Deposit, Ala., the appellee tendered to appellant the freight charges due thereon, and demanded that the appellant deliver the alcohol to him. The defendant refused to deliver the alcohol to appellee on the ground that it could not do so without violating the criminal law of the state. Thereupon this action was instituted before a justice of the peace, and on trial a judgment was rendered against the defendant, and the case was appealed to the circuit court. On the trial of the case in the circuit court, in addition to the facts above stated, it appeared without dispute that the plaintiff, at the time the appellant refused to deliver the alcohol to him, was engaged, in a small way, in the mercantile business, selling, among other things, beverages; that from time to time he had been ordering alcohol in the same way in which this was ordered, in five-gallon lots, such orders being made about a month apart, and which he received and kept at his place of business, using the alcohol in the manufacture of flavoring extracts, put up in bottles and labeled "lemon," "pineapple," and "vanilla," and sold at 10 cents a bottle. The value of the alcohol at the time of the trial was shown, and at the conclusion of the evidence, at the request of the plaintiff, the court directed a verdict in his favor. This action of the court presents the only question for review on this appeal.

[1] It is elementary law that the plaintiff, in an action of detinue, must show that he has property, general or special, in the chattels sought to be recovered, and must be entitled to their immediate possession. Jesse French Piano Co. v. Bradley, 138 Ala. 177, 35 South. 44; Snellgrove v. Evans, 145 Ala. 600, 40 South. 567; Bolton v. Cuthbert, 132 Ala. 403, 31 South. 358, 90 Am. St. Rep. 914.

The following statutes are pertinent to the issues involved in this case:

"That it shall be unlawful for any person, firm or corporation engaged in the business of selling beverages to keep or store on the premises where said beverage business is conducted any prohibited liquors or beverages, the sale, offering for sale, or other disposition of which is prohibited by the law of Alabama, and any person so violating this section shall be guilty of a misdemeanor; and this section is enacted to prevent evasions of the law and to remove opportunity of evading the law by selling prohibited beverages under cover of the legitimate beverage business." Acts 1915, p. 13, § 16.

"That it shall be unlawful for any railroad company, express company, or other common carrier, or any officer, agent or employé or any of them, or any other person to ship or to transport into, or to deliver in this state in any manner, or by any means whatsoever, any spirituous, vinous, malted, fermented or other intoxicating liquors of any kind from any other state, territory or district of the United States, or place noncontiguous to, but subject to the jurisdiction of the United States, or from any foreign country, to any person, firm or corporation within the territory of this state, when the said spirituous, vinous, malted, fermented or other intoxicating liquors, or any of them, are intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package, or otherwise, in violation of any law of this state now in force, or in violation of any law that may be hereafter enacted in this state, or take effect therein." Acts 1915, p. 39, § 1.

"That it shall be unlawful for any person, firm or corporation to accept from any railroad company, express company, or other common carrier, or any officer, agent or employé of any of them, or from any other person any delivery of the liquors mentioned in section 1 of this act [section 1 of this act being the section last above quoted], or any of them, when transported into this state, or delivered in this state in any manner, or by any means whatsoever from the points or places mentioned in section 1 of this act, where the said person, firm or corporation so accepting such delivery intends to receive, possess, or sell, or in any manner use either in original package or otherwise, the said liquors, or any of them, in violation of any law of this state now in force, or of this act or of any law that may be hereafter enacted in this state or take effect therein." Acts 1915, p. 40, § 4.

"That it shall be unlawful for any common, or other carrier, or any other person to deliver to any person any shipment of spirituous, vinous, malted, fermented or other intoxicating or prohibited liquors, whether in non-prohibited shipments or otherwise, or whether brought from without the state, or otherwise, or whether in original packages, or otherwise, on any Sunday, or on any day before 6 o'clock a. m., and after 5 o'clock, p. m." Acts 1915, p. 553, § 1.

"(A) That it shall be unlawful for any person to receive, accept delivery of, possess or have in possession at one time, or within any period of fifteen consecutive days, whether in one or more places, or whether in original packages or otherwise, (1) more than two gallons of vinous liquors, or (2) more than five gallons (forty pints) of malted liquors or fermented liquors, such as beer, lager beer, ale, porter or other similar fermented liquors, either in bottles or other receptacles; or (3) more than two quarts of spirituous or other intoxicating liquors, or other prohibited liquors beyond those named in subdivisions 1 and 2 above; or (4) more than one kind of the three kinds of liquors as hereinabove classified, either at one time, or within said period of fifteen days, and whether in original packages, or otherwise. (B) The receipt or possession of the liquors mentioned in

this section in excess of the quantities above named respectively at one time, or in fifteen consecutive days, and whether in original packages, or otherwise, and the receipt and possession under the same circumstances of more than one kind of the three kinds of liquors as hereinabove classified, shall constitute prima facie evidence that such liquors are kept, or had in possession for sale, or other unlawful disposition. This section shall not apply to the possession of wine, or cordial made from grapes, or other fruit grown and raised by the person making the same for his own domestic use, when such person keeps such wine or cordial for his own domestic use on his own premises; and this section shall not apply to the receipt or possession of alcohol by persons who are permitted by law to possess, sell, or use the same, nor to the receipt or possession of wine for sacramental purposes when received and possessed in accordance with the rules and regulations prescribed by law. This section is not to be construed so as to admit of the receipt, delivery, or possession at one time, or within the said period above named, of more than one kind of the three classes of liquors as above set out, to-wit: (1) vinous liquors; (2) malted or fermented liquors above defined; (3) spirituous liquors, or other intoxicating or prohibited liquors." Acts 1915, p. 554. § 3.

"The retail druggists may sell in quantities not greater than five gallons, alcohol to be used in the arts or for scientific or mechanical purposes, and such druggist may sell in like quantities grain alcohol to chemists and bacteriologists engaged in scientific work and for such purposes only, and such druggists may sell in quantities not greater than one-half gallon, wine to be used for sacramental or religious purposes only. Any person desiring to purchase alcohol for the purposes set out in this section shall sign a written or printed statement giving his name, residence and occupation, and the purpose for which he intends to use said alcohol, and he shall certify that said alcohol is purchased in good faith for such purpose and no other." Acts 1915, § 10, p. 5.

"That wholesale druggists may sell alcohol in quantities not greater than five gallons at one time, to be used in the arts, or for scientific, or mechanical purposes, and for all sales of alcohol except wood and denatured alcohol, they must make and file with the probate judge of the county in which the vendee resides, or does business, a statement in regard to the sale of alcohol in the form and manner now required by law when sales are made by wholesale druggists. All regulations as to the sale and use of alcohol by druggists, or other authorized persons, including physicians who are dealers in drugs in towns of less than one thousand inhabitants, shall remain in effect except as hereby modified. Any wholesale druggist or other person violating any regulation hereby prescribed shall be punished as in other cases of violating the regulations as to alcohol under the existing laws. When such statement is filed in the county of the residence of the vendee, or in which the vendee does business, it need not be filed in the county of the vendor. For filing such statements containing sales made during the month to persons residing in or doing business in a county, and recording same, the probate judge shall receive a fee of twenty-five cents, as now prescribed by law for cases in which the statement is filed in the vendor's county." Acts 1915, § 9, p. 556.

In considering the question of the right of carrier to possess and deliver liquors shipped into this state, to be used in violation of the law, the Supreme Court used this language:

"The only protection, in short, which is accorded to intoxicating liquor in the dry territory of the state, except to that which is had for personal use, for the use of druggists, etc., and for communion purposes, is the protection which is accorded to it by the federal laws governing the subject of interstate commerce. The Webb bill, which we have above quoted, outlaws intoxicating liquors which are shipped into this state from another state, and which are shipped into this state for illegal purposes. Intoxicating liquors which are shipped into this state from another state for illegal purposes are therefore, in so far as this state is concerned, not the subjects of interstate commerce. * * * Such liquors are not now recognized as legitimate subjects of transportation, and a common carrier caught in the possession of such liquors, liquors which, under the express terms of the Webb bill, it is prohibited from bringing into this state, cannot escape the operation of the laws of this state by showing its own violation of a federal statute, passed confessedly for the purpose of aiding this state in its policy, through prohibitory laws, of encouraging temperance among all of its people. The prohibition laws of this state, as they now exist, are sufficiently broad to cover all liquors which no person can lawfully have in his possession, and they became immediately operative upon all liquors shipped for illegal purposes into this state from other states, upon the passage of the Webb bill. * * * That the laws of this state which have been passed for the purpose of promoting temperance are violative of no provision of the state or federal Constitution is a proposition about which there is no room for doubt. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. Congress, in adopting various prohibitory laws with reference to sales, etc., of intoxicating liquors to the Indians, has clearly indicated that, in the opinion of the federal government, such laws subserve a not unwise public policy when applied to certain localities and peoples under the peculiar protection of the federal government. Farrell v. United States, (C. C. A. 1901) 110 Fed. 942, 49 C. C. A. 183." Southern Express Co. v. State, 188 Ala. 454, 66 South. 115.

[2] Under the undisputed evidence in this case, the plaintiff was seeking to obtain possession of the alcohol in question, for the purpose of carrying it to his place of business, where he was engaged in the sale of beverages, to be there kept and used in the manufacture of extracts, in violation of the statute first above quoted. Abernathy v. State, 74 South. 725.[1] The plaintiff was not within the protection of section 10, Acts 1915, page 5, quoted above, nor section 9, Acts 1915, page 556. Under the facts disclosed by the plaintiff's evidence, the carrier could not deliver the alcohol to the plaintiff without violating the criminal law, neither could the plaintiff accept delivery of it without violating the criminal law. In short, the plaintiff not being entitled to the immediate possession of the property, he was not entitled to recover. The court therefore erred in directing a verdict for the plaintiff, and in not directing a verdict for the defendant.

Reversed and remanded.

[1] 15 Ala. App. 595.